OPINION
{¶ 1} Appellant, Mark Forshey, appeals from a Belmont County Common Pleas Court judgment granting permanent custody of his son to appellee, the Belmont County Department of Job and Family Services.
 {¶ 2} On November 4, 2004, Rebecca Oaks gave birth to Mark Oaks. Six days later, appellee filed a complaint alleging that Mark was a neglected child as defined in R.C. 2151.03 and requesting temporary custody of Mark. Specifically, appellee alleged that in 2001 Rebecca lost permanent custody of her one-year-old daughter to a West Virginia children's services agency and it was found that she had abused and neglected her daughter. Furthermore, it alleged that when Rebecca gave birth to Mark, numerous staff members were concerned because she seemed anxious and provided them with inconsistent information. Additionally, Rebecca's doctors strongly recommended that she not take the newborn out in public for six to eight weeks because R.S.V., a severe respiratory virus, was in season. However, the day after Mark was discharged from the hospital, Rebecca and appellant took the infant out to apply for heating assistance. The complaint also alleged that Rebecca had a history of living with men who had criminal records, including having previously lived with a man who had been convicted of child molestation. Finally, it alleged that appellant has been convicted of numerous alcohol and menacing charges.
 {¶ 3} The trial court issued an emergency shelter care order pending a hearing on the complaint. Shortly thereafter, appellant filed a motion for a paternity test to establish if he was Mark's father.
 {¶ 4} The court held a hearing on January 28, 2005. Rebecca stipulated to the allegations in the complaint. However, because the paternity test results were not yet known, appellant neither admitted nor denied the allegations in the complaint. The court adjudicated Mark a neglected child and ruled that appellee was to have temporary custody of Mark.
 {¶ 5} Subsequently, appellee set up a case plan for Mark. While Rebecca participated in the plan, appellant did not.
 {¶ 6} Upon appellee's motion, the trial court approved permanent surrender of Mark by Rebecca on February 22, 2005. Rebecca singed the permanent surrender forms in court. The court granted custody to appellee, pending further orders.
 {¶ 7} The court held its next hearing on April 6, 2005. At this time, the court established that appellant is Mark's father. A few weeks later, the court put on a child support order for appellant in the amount of $10 per month and ordered him to undergo a psychological evaluation, a drug and alcohol evaluation, attend a domestic violence program, and attend parenting classes — all as set out in the case plan. Additionally, it ordered appellant was to have supervised visitation with Mark.
 {¶ 8} On September 21, 2005, appellee filed a motion to modify temporary custody to permanent custody. The court held a hearing on the motion and subsequently granted permanent custody to appellee. It found by clear and convincing evidence that reasonable efforts had been made to reunite the father and child and prevent custody being placed with appellee. It also found that a grant of permanent custody to appellee was in Mark's best interest. And it found that appellant failed to comply with the reunification case plan in all regards. Finally, it found that Mark could not be placed with appellant within a reasonable period of time.
 {¶ 9} Appellant filed a timely notice of appeal on December 28, 2005.
 {¶ 10} Appellant raises two assignments of error, the first of which states:
 {¶ 11} "THE TRIAL COURT ERRED IN FINDING THAT THE BELMONT COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES HAS MADE REASONABLE EFFORTS (1) TO PREVENT THE REMOVAL OF MARK JOSEPH THOMAS OAKS FROM HIS HOME; (2) TO ELIMINATE THE CONTINUED REMOVAL OF JOSEPH [sic.] THOMAS OAKS FROM HIS HOME; AND (3) TO MAKE IT POSSIBLE FOR JOSEPH [sic.] THOMAS OAKS TO RETURN HOME."
 {¶ 12} Appellant first points out that when appellee filed the complaint and alleged neglect, he was not yet recognized as the father. He also points out that when the first case plan was put in place, in December 2004, he still had not been determined to be Mark's father. He argues that from Mark's birth through January 2005, he had no right and no duty to exercise any control over how Rebecca cared for Mark because paternity had not been established.
 {¶ 13} Next, appellant argues that the case plans were not designed to remedy the original reason appellee removed Mark from his home. He asserts that the only reason appellee removed Mark was because Rebecca took him outside against the recommendation of her doctors. He claims that the case plan called for him to jump through "bureaucratic hoops," which were designed by appellee to insure adoption by the foster parents instead of reunification with him.
 {¶ 14} Finally, appellant argues that appellee did not pursue reasonable efforts to reunite him with Mark. In addition to requiring him to comply with a case plan that was not related to the reason for Mark's removal, appellant asserts that appellee waited until six months after Mark was born to schedule a visitation for him and offered him no transportation to get to the scheduled visits.
 {¶ 15} In reply, appellee points out that while appellant argues that the case plan is unfair, he never filed objections to the magistrate's April 29, 2005 decision approving the case plan. Thus, appellee argues, appellant has waived any error on appeal dealing with the case plan.
 {¶ 16} Appellee's argument regarding waiver is correct. On April 6, 2005, appellant filed proposed changes to the case plan. A magistrate held a hearing on this motion and other matters on April 29. The magistrate subsequently filed his decision, which incorporated some of appellant's changes to the case plan and denied others. The trial court immediately adopted the magistrate's decision and entered judgment. In its judgment the court made clear, however, that as provided by law, it would "still consider any written objections filed by any party within fourteen (14) days of the filing of this entry." It also emphasized that a party would not be able to assign as error on appeal the court's adoption of any conclusion of law or finding of fact unless the party specifically objected pursuant to Juv.R. 40(E)(3).
 {¶ 17} Absent plain error, a party who fails to file objections to a magistrate's decision under Juv.R. 40(E)(3) waives their right to appeal. In re Aldridge, 4th Dist. No. 02CA2661, 2002-Ohio-5988, at ¶ 16. Because appellant failed to file objections to the magistrate's decision adopting the case plan, he has waived any error relating to the plan. However, we will still touch on appellant's allegations regarding reunification as they apply to visitation.
 {¶ 18} R.C. 2151.419(A)(1) requires a court, at any hearing that continues the removal of a child from his home, to determine whether the children services agency has made reasonable efforts to eliminate the continued removal of the child from his home or to make it possible for the child to return safely home. The agency bears the burden of proving that it has made such reasonable efforts. R.C. 2151.419(A)(1).
 {¶ 19} When a trial court determines whether the agency made reasonable efforts to prevent removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In reBrewer (Feb. 12, 1996), 7th Dist. No. 94-B-28.
 {¶ 20} Appellant argues that appellee did not demonstrate that it used reasonable efforts to reunite him with Mark. In support, he asserts that appellee did not schedule visitation for him with Mark until Mark was six months old. However, appellant contradicts himself here. Earlier, he argued that the he was not required to participate in the case plan or exercise any control over Mark's care until the DNA test proved that he was the father. The DNA results were first filed with the court on February 22, 2005. A formal admission of paternity by appellant was not entered on the record until April 6, 2005. Appellee scheduled appellant's first visit with Mark on May 5, 2005. (Tr. 28). So at the most, appellee waited one to three months to schedule a visit, not six months as appellant alleges. Furthermore, appellant never requested that he be permitted to visit with Mark before this time. (Tr. 27). And in September 2005, appellant simply quit going to visitations with his son, thus demonstrating his lack of desire to visit with Mark. (Tr. 30).
 {¶ 21} Furthermore, Jamie Cohen Pickens, Mark's caseworker, testified regarding appellee's efforts to reunify appellant and Mark. Appellee put the case plan in place with many aspects for appellant to complete. However, appellant failed to start, let alone complete, any of the case plan requirements. (Tr. 17-19, 21-25). Additionally, appellee scheduled weekly visitation for appellant with Mark. (Tr. 28). However, appellant quit going to the visitations after August 2005. (Tr. 30).
 {¶ 22} It was reasonable for the trial court to conclude from this evidence that appellee did make reasonable efforts to reunify Mark with appellant. However, it seems that appellant was not willing to accept these efforts and work towards reunifying with his son. Accordingly, appellant's first assignment of error is without merit.
 {¶ 23} Appellant's second assignment of error states:
 {¶ 24} "THE GRANTING OF PERMANENT CUSTODY TO THE BELMONT COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AN ABUSE OF DISCRETION AS EVIDENCE PRESENTED DID NOT MEET THE STATUTORY EVIDENTIARY STANDARD OF CLEAR AND CONVINCING EVIDENCE AS TO MATTERS RELATED TO NOT BEING ABLE TO PLACE THE CHILDREN WITH THE FATHER IN [sic.] REASONABLE AMOUNT OF TIME AND THAT THE ACTIONS TAKEN WERE NOT IN THE BEST INTEREST OF THE CHILDREN."
 {¶ 25} Appellant argues that the court ignored the testimony of his witnesses who testified that he was able to care for children while it listened to those same witnesses when they testified regarding his drinking and criminal past. He points out, however, that the evidence of drinking and convictions were in the past and appellee presented no evidence that he currently engages in such behavior.
 {¶ 26} He further argues that since Mark was removed from Rebecca's care before he could acknowledge that he was the father, he has not had a chance to demonstrate that he can care for his son.
 {¶ 27} Appellant further asserts that appellee's only witness, caseworker Pickens, provided contradictory testimony regarding whether she had ever been in his home. (Tr. 24, 31, 47).
 {¶ 28} Finally, appellant argues that the trial court should have specified that it considered the factors set out in R.C.2151.414(E) and which of those factors applied in this case.
 {¶ 29} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990),52 Ohio St.3d 155, 157, 556 N.E.2d 1169, citing Stanley v. Illinois
(1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. However, this right is not absolute. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 30} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion.Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 31} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613.
 {¶ 32} Pursuant to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 33} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 34} "* * *
 {¶ 35} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
 {¶ 36} Thus, before it can grant permanent custody of a child to a children services agency, the court must evaluate the child's best interest using the factors set out in R.C.2151.414(D) and determine whether the child cannot or should not be placed with either parent within a reasonable time using the factors set out in R.C. 2151.414(E).
 {¶ 37} The best interest factors are:
 {¶ 38} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 39} "(2) The wishes of the child, * * *;
 {¶ 40} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 41} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 42} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 43} The R.C. 2151.414(E)(7) to (11) factors are:
 {¶ 44} "(7) The parent has been convicted of or pleaded guilty to * * * [certain offenses involving the child, the child's siblings, or another child who lived in the parent's household at the time of the offense.]
 {¶ 45} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 46} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment * * *.
 {¶ 47} "(10) The parent has abandoned the child.
 {¶ 48} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 49} Firstly, it should be noted that none of the R.C.2151.414(E)(7) to (11) appear to apply here. Additionally, Mark is too young to have expressed his wishes. Thus, factors two and five do not apply in this case.
 {¶ 50} Examining the remaining best interest factors reveals the following,
 {¶ 51} As to the first factor, the only person about whom testimony was provided regarding Mark's interaction was appellant. Pickens testified that during visitations with appellant, Mark became very distraught and cried. (Tr. 28-29). The guardian ad litem, David Trouten, testified that during the one visit he observed, appellant held Mark awkwardly. (Tr. 61). He stated that appellant held Mark on his lap facing away from him and engaged in conversation with the other adults in the room. (Tr. 61).
 {¶ 52} As to the third factor, Mark has not been in appellee's custody for 12 months out of a consecutive 22-month period. However, his custodial history is still relevant. Mark was born on November 4, 2004. He was released from the hospital on November 9. On November 10, appellee took emergency custody of him. Mark has been in appellee's custody since that time residing with the same foster parents. Rebecca surrendered custody of Mark. And appellant only visited with him a handful of times. Thus, his foster parents are the only family Mark has known in his short life.
 {¶ 53} As to the fourth factor, it does not seem that a secure placement can be achieved for Mark without a grant of permanent custody to appellee. Rebecca surrendered Mark. And although appellant claims that he wants custody of his son, his actions and inactions demonstrate otherwise. Appellant terminated his visits with Mark. (Tr. 29, 122). Appellant failed to follow any of the case plan requirements. (Tr. 27, 121). And appellant even refused to let the caseworker into his home. (Tr. 31, 131).
 {¶ 54} Based on these factors, the trial court did not abuse its discretion in finding that it was in Mark's best interest that it grant permanent custody to appellee.
 {¶ 55} Additionally, the trial court had to consider whether Mark cannot or should not be placed with either parent within a reasonable time using the R.C. 2151.414(E) factors.
 {¶ 56} The trial court entered a finding that Mark cannot and should not be placed with appellant within a reasonable period of time. And while it did not specify by number which of the R.C.2151.414(E) factors it found to exist, the court's findings demonstrate that it found R.C. 2151.414(E)(1) and (4) exist. Those factors are:
 {¶ 57} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 58} "* * *
 {¶ 59} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." R.C. 2151.414(E)(1)(4).
 {¶ 60} As to the first factor, the trial court found that appellant never attempted, started, or completed the requirements set out by the case plan. It noted that appellant failed to attend a psychological evaluation, participate in parenting education, or demonstrate appropriate parenting skills. Additionally, it pointed out that appellant failed to undergo a drug and alcohol assessment, attend domestic violence education, or attend counseling, all as stated in the case plan.
 {¶ 61} As to the fourth factor, the court found that appellant only had 11 visits with Mark before voluntarily terminating his visits. Furthermore, it found that appellant failed to maintain contact with appellee and refused to make his home available for a home study.
 {¶ 62} The evidence supports the court's findings. Pickens testified that appellant had not completed any of his case plan goals. (Tr. 17-24). She also stated that appellant would not allow her into his residence. (Tr. 24-25). In fact, Pickens stated that appellant moved to West Virginia and never informed appellee. (Tr. 26). Pickens additionally testified that appellant simply stopped attending visits with Mark for no reason. (Tr. 29). And appellant corroborated Pickens' testimony. He admitted that he did not comply with the case plan, that he voluntarily terminated visitation, that he moved without informing appellee, and that he refused to let Pickens into his residence. (Tr. 121-22, 128-29, 133).
 {¶ 63} In addition to this evidence, it is worth pointing out that throughout his testimony appellant did not appear to refer to baby Mark as "Mark" or "my son." When referring to his son, appellant used words and phrases like "it," "the baby," "the child," and "the kid." (Tr. 114-15, 119-20, 120, 122, 129, 131). This conveyed the impression that appellant had no connection with Mark.
 {¶ 64} Finally, appellant presented numerous witnesses who all testified that he should get custody of Mark and that he would make a good parent. However, these witnesses also testified to the following. Johnny Crawford, appellant's friend, testified that he has never seen appellant and Mark together. (Tr. 66-67). Christian Dutton, appellant's brother, has never seen Mark. (Tr. 75). He also testified that while appellant is capable of caring for Mark, appellant needs "maturity help." (Tr. 76). He also stated that appellant has had a bit of a drinking problem and that he has done "county time" for crimes such as assault and battery and disorderly conduct. (Tr. 77). Rebecca testified that she lives with appellant. (Tr. 82). She also stated that although she signed the surrender of her parental rights, she wanted to withdraw that surrender. (Tr. 84). Next, Labrea Howland testified. She was appellant's stepdaughter, whom he helped to raise from the time she was a young child. (Tr. 89). She stated that appellant taught her things, encouraged her, and cared for her. (Tr. 89). However, she had never seen Mark. (Tr. 90). Next, Harry Hartley, appellant's friend testified that he spends time at appellant's residence "quite often." (Tr. 94). Hartley then testified that he is a registered sex offender. (Tr. 95).
 {¶ 65} Given this testimony, along with appellee's reasonable attempts at reunification, the best interest factors, and the evidence that Mark cannot and should not be placed with appellant within a reasonable period of time, we cannot conclude that the trial court abused its discretion in granting Mark's permanent custody to appellee. Accordingly, appellant's second assignment of error is without merit.
 {¶ 66} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.